UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AMCM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:10CV 80 LMB |
| ) | |
| PHILADELPHIA INDEMNITY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Complaint of Plaintiff AMCM, Inc. Plaintiff seeks damages for alleged breaches of an insurance contract and for vexatious refusal to pay. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court is Defendant Philadelphia Indemnity Insurance Company's Motion for Summary Judgment. (Doc. No. 16). Also pending is Plaintiff AMCM, Inc.'s Motion for Partial Summary Judgment. (Doc. No. 18). Responses and Replies have been filed. (Docs. No. 27, 28, 32, 33). For the reasons discussed below, defendant's motion for summary judgment will be granted and plaintiff's motion for partial summary judgment will be denied.

## Background

The parties agree on the underlying facts except where indicated. Plaintiff AMCM, Inc. ("AMCM") is a Missouri corporation with its principal place of business and commercial domicile located in the City of St. Louis, Missouri. AMCM was administratively dissolved effective June

1

1, 2009. Christopher Daly was the President and sole shareholder of AMCM. Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") is a Pennsylvania corporation licensed and qualified by the State of Missouri to conduct insurance business within Missouri.

Philadelphia issued an insurance policy to plaintiff AMCM d/b/a Mary Margaret's Daycare Center insuring plaintiff against the risk of loss by fire damage at certain described premises and at "newly acquired" premises/personalty for a policy period commencing March 30, 2007, and ending March 30, 2008 ("Policy"). At the time the Policy issued the following were included as Insured Premises: 5440 Gravois Avenue, Saint Louis, MO 63116-233; 2011 Redman Road, Saint Louis, 63138-1107; 5465 Gravois Avenue, Saint Louis, MO 631162340; and 4040 South Broadway, Saint Louis, MO 63118-4625 ("Named Insured Premises"). The Named Insured Premises include a warehouse, two daycare centers, and an office building.

Plaintiff alleges that on January 22, 2008, it entered into a Real Estate Lease ("Lease") for property in Clubb, Missouri ("Clubb Property").[1] The Clubb Property was originally acquired by plaintiff's sister corporation as an investment. The Clubb Property has been described as a "small hobby farm," and consists of 38 acres of land on which a frame house, barn, and shed were situated. Plaintiff alleges that the Clubb Property was intended to be used in connection with the daycare center business conducted at the Named Insured Premises.[2] Specifically, Mr. Daly testified that plaintiff leased the Clubb Property for use in connection with its summer program for inner-city children. Mr. Daly testified that he thought the Clubb Property might be a destination

---

[1]Defendant admits that Christopher Daly did so testify but states that defendant was not given a copy of the Lease until after the fire loss had occurred. Defendant argues that the Lease was an after-the-fact attempt to obtain coverage where none would otherwise exist.

[2]Defendant admits that Christopher Daly did so testify. Defendant disputes the legal significance of this fact, assuming that AMCM intended to use the Clubb Property as it alleges.

2

place for inner-city children to have a country experience and to hike and fish. Mr. Daly stated that he hoped that the children would eventually stay at the Clubb Property overnight.

On or about February 1, 2008, a fire occurred at the Clubb Property, which destroyed the vacant house on that property. Plaintiff alleges that the Clubb Property was insured under the terms of the "Newly Acquired or Constructed Property" provision of the Policy. Defendant argues that the Clubb Property was not insured under the Plan as a newly acquired property because its intended use was not similar to those of the other Named Insured Premises.

Plaintiff alleges that Philadelphia materially breached the Policy by failing and refusing to timely pay plaintiff the sums due plaintiff under the Policy. Plaintiff seeks damages in excess of $218,000.00, including full indemnification benefits due and payable to plaintiff as a "total loss" under the Policy, prejudgment interest, and other economic and non-economic losses. In the alternative, plaintiff seeks full indemnification benefits due and payable to plaintiff as a "partial loss" under the Policy, along with prejudgment interest, and other economic and non-economic losses.

Plaintiff also asserts a vexatious refusal to pay claim. Plaintiff alleges that Philadelphia, at least from January 1, 2000 through the current date, had in effect an illegal corporate policy and practice to do whatever was necessary or convenient, either by unlawful means or by lawful means to accomplish an unlawful purpose, either: (a) not to pay insured's indemnification as expressly contracted in a Company policy of casualty insurance or (b) to unreasonably delay contracted indemnification payments in order to benefit from the earned interest thereon. Plaintiff alleges that Philadelphia intentionally and unlawfully asserted and implemented its Policy against plaintiff and Philadelphia's refusal to timely pay plaintiff the contracted indemnification benefits under the Policy was vexatious and without reasonable cause. Plaintiff requests damages in a sum

equal to plaintiff's reasonable attorney's fees plus an amount equal to fifteen percent of the first $2000.00 and ten percent of the amounts in excess of $2000.00 recovered in this action.

I. **Summary Judgment Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. "Because the interpretation and construction of insurance policies is a matter of law, the issue of whether the duty to defend or indemnify exists under a policy is particularly amenable to summary judgment." Newyear v. Church Ins. Co., 155 F.3d 1041, 1043 (8th Cir. 1998).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

II. **Discussion**

The material facts are not in dispute.[3] The question presented in this case is whether the Clubb Property was insured under the Policy as "Newly Acquired" property.

Missouri law applies in this diversity of citizenship action. Under Missouri law, the interpretation of an insurance contract is a question of law. Schmitz v. Great Am. Assur. Co., 337 S.W.3d 700, 705 (Mo. 2011) (en banc). When interpreting insurance contract terms, the court should apply meanings understood by ordinary people purchasing the insurance. Id. at 705-06. The court should interpret the policy "so as to afford rather than defeat coverage." Murray v. Am. Fam. Mut. Ins. Co., 429 F.3d 757, 764 (8th Cir. 2005) (citation omitted) (applying Missouri law). Ambiguities in the insurance contract must be construed against the insurer. Id. The insured bears the burden of proving coverage, while the insurer bears the burden of establishing the applicability of an exclusion. State Farm Mut. Auto Ins. Co. v. Stockley, 168 S.W.3d 598, 600 (Mo. Ct. App. 2005).

To establish a breach of contract claim, the plaintiff bears the burden of proving: (1) the insurance policy was issued; (2) the insurance policy was delivered; (3) she paid the premiums associated with the insurance policy; (4) the loss alleged was covered by the insurance policy; and (5) proper notice was given to the insurer according to the terms of the insurance policy. Mo. Commercial Inv. Co. v. Employers Mut. Cas. Co., 680 S.W.2d 397, 400 (Mo. Ct. App. 1984).

At issue in this case is Section A.5 of the Policy entitled "Coverage Extensions." (Def's Ex. A at p. 38-39). The Policy states as follows:

---

[3]Plaintiff has objected to many of defendant's statements of facts on grounds such as relevancy, best evidence, and foundation. Plaintiff, however, has failed to controvert any of defendant's facts. The court finds that plaintiff's objections lack merit. As such, the court deems admitted defendant's statement of material facts to which no proper response was made. See Local Rule 7-4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

**a. Newly Acquired or Constructed Property**

   **(1) Buildings**

   If this policy covers Buildings, you may extend that insurance to apply to:

   **(a)** Your new buildings, while being built on the described premises; and

   **(b)** Buildings you acquire at locations, other than the described premises, intended for
   **(I)** Similar use as the building described in the Declarations; or

   **(ii)** Use as a warehouse

   The most we will pay for loss or damage under this Extension is $250,000 at each building.

   **(2) Your Business Personal Property**

   **(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

   **(I)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

   **(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

   **(iii)** Business personal property that you newly acquire, located at the described premises.

   The most we will pay for loss or damage under this Extension is $100,000 at each building.

   **(b)** This Extension does not apply to:

   **(I)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

   **(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

   **(3) Period of Coverage**

> With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:
>
> **(a)** This policy expires;
>
> **(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or
>
> **(c)** You report values to us.
>
> We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

(Id.).

Defendant argues that the pleadings, depositions and exhibits before the court establish that the Clubb Property does not qualify as "newly acquired" property because its intended use was not similar to those of the Named Insured Premises. Defendant contends that the risks underwritten by the Policy encompassed daycare centers or an office building/warehouse in the urban setting of St. Louis. Defendant notes that the farmhouse and outbuildings on the Clubb Property are located in a rural area more than 120 miles south of St. Louis in Wayne County, Missouri. Defendant argues that the intended use of the Clubb Property as country property, an overnight destination, a petting zoo or farm implicates risks separate and distinct from the day care or office operations undertaken at each of plaintiff's St. Louis locations. Defendant contends that, because plaintiff cannot establish the Clubb Property had a "similar use" to any property scheduled in the Policy, defendant is entitled to summary judgment on plaintiff's claims as a matter of law.

Plaintiff argues that it is undisputed that AMCM acquired the Clubb Property for use as an extension of the Named Insured Premises daycare business to be used as a "destination" daycare location. Plaintiff contends that this satisfies the "similar use" provision for coverage of newly

acquired property under the Policy. Plaintiff, therefore, argues that it is entitled to summary judgment on its breach of contract claims.

The Policy does not define "similar use." Plaintiff does not argue that the language of the Policy is ambiguous. When interpreting language of an insurance policy that is not defined, courts must give a term its ordinary meaning unless it plainly appears that a technical meaning was intended. Martin v. U.S. Fidelity and Guaranty Co., 996 S.W.2d 506, 508 (Mo. banc 1999); Mansion Hills Condominium Ass'n v. American Family Mut. Ins. Co., 62 S.W.3d 633, 638 (Mo. Ct. App. 2001). The ordinary meaning of a term is that which an average layperson would reasonably understand. Id. To determine the ordinary meaning of a term, courts will consult standard English language dictionaries. Id.

The term "similar" is defined as "[r]esembling though not completely identical." American Family Mut. Ins. Co. v. Ragsdale, 213 S.W.3d 51, 54 (Mo. Ct. App. 2006) (quoting Webster's II New College Dictionary 1029 (1995)).

Plaintiff contends that "it is undisputed AMCM acquired the Clubb Property for use as an extension of the insured Named Insured Premises day care business (i.e. to be used as a "destination" day care location)." (Doc. No. 19, p. 2; Doc. No. 28, p. 11; Doc. No. 32, p. 2). The court first notes that defendant disputes that plaintiff leased the Clubb Property from its sister corporation on January 22, 2008, with the intent to use the property as a destination daycare location. In fact, defendant argues that the Lease was an after-the-fact attempt to obtain coverage where none would otherwise exist.

This factual dispute, however, is immaterial to the resolution of the parties' motions. As defendant argues in its Response to plaintiff's motion, even assuming that plaintiff intended to use the Clubb Property as a destination daycare as Mr. Daly testified, the Clubb Property is not

8

covered under the Policy.  The court finds that the average layperson would not find that plaintiff's intended use of the Clubb Property was similar to that of the Named Insured Premises.

The Clubb Property is approximately one and three-quarters hours away from plaintiff's daycare facilities.  Plaintiff's daycare facilities are all located in an urban setting in St. Louis and operate five days a week from approximately 6:00 a.m. to 6:00 p.m.  Mr. Daly testified that the Clubb Property would be used as a destination, or an overnight camp.  Mr. Daly indicated that the Clubb Property would provide the children with a country experience, and would offer activities such as fishing and hiking.  Mr. Daly testified that AMCM had never owned a place where children were taken on destination trips, nor had AMCM ever operated an overnight camp.  Mr. Daly admitted that this was a "new venture." (Def's Ex. E, p. 39-40).  Mr. Daly stated that the children from his daycare facilities were typically taken on field trips to destinations in the St. Louis area, and that he did not recall if the children had ever been taken to a destination that was more than an hour-and-a-half away.

The court finds that the record establishes that the Clubb Property was not intended for similar use as the Named Described Premises.  The average layperson would not find this "new venture" of taking children from an inner-city daycare facility 120 miles away to a country property for a day trip or overnight trip similar to operating a daycare facility five days a week from 6:00 a.m. to 6:00 p.m.  This new venture would reasonably be expected to involve different risks from an insurer's perspective than the risks involved in operating a licensed daycare facility.  As such, the Clubb Property does not qualify as newly acquired property as clearly and unambiguously defined in the Policy, making coverage under the Policy inapplicable.  Thus, summary judgment will be granted in favor of Defendant Philadelphia and against Plaintiff AMCM.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 16) be and it is **granted.** A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. No. 18) be and it is **denied**.

Dated this   3rd    day of January, 2012.

*Lewis M. Blanton*
LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE